**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CHARLES H. HOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-312-JHP |
| ) | |
| 1) LIFESHARE COLLATERAL ) | |
|    HOLDINGS, L.L.C.; ) | |
| ) | |
| 2) MADISON ONE ASSOCIATES, L.L.C., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**OPINION AND ORDER**

Before the Court are Defendant LifeShare Collateral Holdings, L.L.C. Special Appearance Contesting Jurisdiction and Motion to Dismiss,[1] Special Appearance and Motion to Dismiss of Defendant Madison One Associates, L.L.C.,[2] Plaintiff's Response in Opposition to Defendants' Motions to Dismiss,[3] Defendant LifeShare Collateral Holdings, L.L.C.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction,[4] Defendant LifeShare Collateral Holdings L.L.C.'s Reply to Plaintiff's Response to Defendant's Motion to Dismiss,[5] Defendant Madison One Associates, L.L.C.'s Reply to Plaintiff's Response to Special Appearance and Motion to Dismiss,[6] and Plaintiff's Response in Opposition to Life Share Collateral's Motions to Dismiss for Lack of Subject

---

[1] Docket No. 9.

[2] Docket No. 11.

[3] Docket No. 15.

[4] Docket No. 17.

[5] Docket No. 18.

[6] Docket No. 19.

Matter Jurisdiction.[7] For the reasons set forth below, Plaintiff's Complaint for Declaratory Judgment is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

On or before December 3, 2008, Plaintiff Charles H. Hood was approached by insurance agents to purchase a life insurance policy which would later be sold for profit in the secondary market.[8] A Minnesota Irrevocable Trust was established in Plaintiff's name to allow Plaintiff to purchase these policies.[9] Plaintiff alleges he was at all times informed that financing for the policy would be non-recourse against him personally.[10]

Phoenix Life Insurance (Phoenix Life) thereafter accepted an application submitted on Plaintiff's behalf, with financing arranged through, LifeShare Financial, an apparent affiliate of LifeShare Collateral Holdings, L.L.C. (LSCH).[11] Upon acceptance, Plaintiff's agent in New York submitted various documents for Plaintiff's signature including a Personal Guaranty, which identified a loan to be made for the initial purchase and funding of a $4.5 million policy to be issued by Phoenix Life.[12] Plaintiff signed the Personal Guaranty in Tulsa, Oklahoma and mailed it to New York, allegedly based upon the agent's continued representations that the Personal Guaranty was

---

[7] Docket No. 20.

[8] Complaint at 2, Docket No. 2.

[9] *Id.* LifeShare Collateral Holdings, L.L.C. Special Appearance Contesting Jurisdiction and Motion to Dismiss (LSCH Motion 1) at 1, Docket No. 9.

[10] Complaint at 2, Docket No.2; Response in Opposition to Defendants' Motion to Dismiss at 2, Docket no. 15.

[11] *Id.*

[12] *Id.*

2

merely a formality required by the lender and that the financing would remain non-recourse against Plaintiff.[13]

Plaintiff alleges that after he was furnished a copy of the policy issued by Phoenix Life, the agent declined the policy and returned it without notice to the Plaintiff.[14] Plaintiff claims the agent instead arranged for a larger $5.5 million policy, with a larger sales commission,to be issued by Lincoln National Life Insurance Company (Lincoln Life).[15] Applications for the Lincoln Life policy were submitted on Plaintiff's behalf and financing was again arranged through LifeShare Financial.[16]

Plaintiff claims that, rather than secure a new Personal Guaranty for the larger policy, the agent, without Plaintiff's knowledge, consent, or approval, merely substituted and affixed the signature page from his previous guaranty to a new Personal Guaranty.[17] Plaintiff claims he was never informed of this unauthorized page substitution and was unaware of the subsequently-issued policy from Lincoln Life for nearly two years.[18]

Plaintiff alleges that he became aware of the Lincoln Life Policy when Defendants LSCH and Madison One Associates contacted him as holders of the Personal Guaranty, and that he has since made a monthly premium payment of $10,000.[19] Plaintiff claims that he is unable to maintain

---

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*Id.* at 2-3.

[18]*Id.* at 3.

[19]*Id.*

the Policy, and that it has lapsed.[20] Plaintiff further claims Defendants have sought to enforce the Personal Guaranty, seeking from him approximately $100,000.[21] Plaintiff now requests that the Court enter a declaratory judgment voiding the Personal Guaranty; that it enter judgment exonerating Plaintiff of any liability pursuant to the Personal Guaranty, and that Plaintiff be awarded all attorney fees and costs incurred in prosecuting this action.[22]

Defendant LSCH seeks to dismiss based on choice of law and choice of forum clauses contained in the Loan and Security Agreement, which it contends is incorporated by reference into the Personal Guaranty signed by Plaintiff.[23] Defendant Madison One Associates L.L.C. seeks dismissal on lack of venue generally.[24] In subsequent motions, both Defendants request dismissal on the grounds that the Court lacks subject matter jurisdiction to hear Plaintiff's Complaint for Declaratory Judgment.[25]

---

[20] Affidavit at 2, Docket No. 20-1.

[21] Complaint at 3, Docket No. 2; Affidavit at 2-3, Docket No. 15-1; Affidavit at 2, Docket No. 20-1.

[22] Complaint at 3, Docket No. 2.

[23] LifeShare Collateral Holdings, L.L.C. Special Appearance Contesting Jurisdiction and Motion to Dismiss at 2-5, Docket No. 9. In the alternative, LSCH argues that Plaintiff is a "closely related third party" to the Loan and Security Agreement and should be bound by the forum selection language in it. *Id.* at 5-6.

[24] Special Appearance and Motion to Dismiss of Defendant Madison One Associates, L.L.C., at 1-3, Docket No. 11; Madison Associates L.L.C.'s Reply to Plaintiff's Response to Special Appearance and Motion to Dismiss at 5-6, Docket No. 19.

[25] LifeShare Collateral Holdings L.L.C.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction at 1-3, Docket No. 17; Madison Associates L.L.C.'s Reply to Plaintiff's (*cont.*) (*cont.*) Response to Special Appearance and Motion to Dismiss at 3-5, Docket No. 19.

**DISCUSSION**

The question of subject matter jurisdiction is a preliminary issue which must be resolved before the Court may hear any other issue.[26] Defendants claim that this Court lacks subject matter jurisdiction to hear Plaintiff's Complaint for Declaratory Judgment because there is no actual controversy at issue.[27] "[A] declaratory judgment plaintiff must present the court with a suit based on an 'actual controversy,' a requirement the Supreme Court has repeatedly equated to the Constitution's case-or-controversy requirement."[28] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[29]

Plaintiff offers, and the briefs from both sides in this case indicate, that the parties "have taken adverse positions with respect to their existing obligations."[30] Namely, whether or not Plaintiff is liable to the Defendants for the Personal Guaranty at issue in this case. It remains for this Court to determine if this controversy is of sufficient reality and immediacy to warrant a declaratory judgment.

---

[26] *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (questions of law and issues of fact must be decided after, not before the court has assumed jurisdiction).

[27] LifeShare Collateral Holdings, L.L.C.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction at 1-3, Docket No. 17; Madison One Associates, L.L.C.'s Reply to Plaintiff's Response to Special Appearance and Motion to Dismiss at 3-5, Docket No. 19.

[28] *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir.2008).

[29] *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

[30] *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 242, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

In *Surefoot LC v. Surefoot Corporation,* the Tenth Circuit discussed the reality and immediacy requirements as outlined by the Supreme Court in *Aetna Life Insurance Co. v. Haworth* and *Maryland Casualty Co. v. Pacific Coal & Oil Co.*[31] In both *Aetna* and *Maryland Casualty*, the Supreme Court found sufficient reality and immediacy requirements were met when an insurance claimant's claim had been denied, but the claimant had yet to file suit against the insurer.[32]

Unlike the insurers in *Aetna* and *Maryland Casualty*, Plaintiff's Complaint does not claim that Defendants have contacted him specifically seeking to enforce the Personal Guaranty. Plaintiff's Complaint offers that "it is anticipated that the policy will lapse,"[33] and that he "has been told the amount which would be sought [ ] totals the approximate sum of $100,000"[34]

However, Plaintiff later states in a sworn Affidavit that the policy has in fact lapsed.[35] Further, Plaintiff states, in two, separate sworn affidavits, that Defendants have contacted him and have both "claim[ed] I am liable under the Personal Guaranty bearing my unauthorized signature" and "indicated they will seek to enforce the Personal Guaranty."[36] Copies of email correspondence between Plaintiff and LSCH offered by Defendant LSCH show that Plaintiff has been told that his

---

[31]*Surefoot*, 531 F.3d at 1244.

[32]*See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239-40, 57 S.Ct. 461, 465, 81 L.Ed. 617 (1937); *Maryland Cas. Co.*, 312 U.S. at 274, 61 S.Ct. at 513, 85 L.Ed. 826.

[33]Complaint for Declaratory Judgment at 3, Docket No. 2.

[34]*Id.*

[35]Affidavit at 2, Docket No. 20-1. Plaintiff's affidavits represent material outside the pleadings, consideration of which would normally require the Court to convert Defendants' motions to dismiss to motions for summary judgment upon party submission. *See Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir.1999). Because the Court is not rendering its judgment on Defendants' 12(b)(6) motions, such conversion is unnecessary.

[36]*See* Affidavit at 2, Docket No. 20-1; Affidavit at 2-3, Docket No. 15-1.

remaining obligation under the guaranty is approximately $100,000.[37] Although these particular emails do not openly indicate impending enforcement by LSCH, the Court accepts Plaintiff at his sworn word that Defendants have stated they will seek enforcement of the Personal Guaranty.[38] The lapse of the Policy, combined with Defendants' statements regarding enforcement of the Personal Guaranty, demonstrate that the instant the controversy is both real and immediate. In this instance, a declaration of the rights of the parties will end controversy and uncertainty as to Plaintiff's duties under the contested Personal Guaranty and Defendants' right to enforce it. The law does not require Plaintiff to wait for actual enforcement before seeking a declaration of those rights.[39]

Both the Supreme Court and the Tenth Circuit have made clear that, although the Declaratory Judgment Act gives federal courts competence to make a declaration of party rights, it does not impose any duty to do so.[40] The Tenth Circuit has adopted an expanded list of factors to weigh when deciding whether or not to hear a declaratory action.[41] These include:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the

---

[37] LifeShare Collateral Holdings L.L.C.'s Reply to Plaintiff's Response to Defendant's Motion to Dismiss at Exhibit 1, Docket No. 18-1. The emails show that an employee answered Plaintiff's questions regarding his duties under the Personal Guaranty and asked if payment had been made. Nothing in the correspondence indicates threats of consequences, litigation, or other signs that the employee is seeking to enforce the Personal Guaranty.

[38] Affidavit at 2, Docket No. 20-1; Affidavit at 2-3, Docket No. 15-1.

[39] *Cf. Surefoot*, 531 F.3d at 1245 n.5 ("The case before us also parallels a hypothetical offered by Wright and Miller as a paradigmatic instance where declaratory judgment jurisdiction should be held to exist: If Jones Company does not sue [ ], but merely threatens Smith, Smith will have a lively interest in determining [his rights]").

[40] *State Farm Fire & Cas. Co., v. Mhoon*, 31 F.3d 979, 982 (*citing Public Affairs Assoc. Inc v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962)).

[41] *Mhoon*, 31 F.3d at 983.

declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.[42]

It is clear that a declaration of party rights as to the Guaranty would settle the controversy. Should this Court side with Plaintiff, his obligation under the Guaranty would be void, and any further action on the contract by Defendants would be mooted. Conversely, a decision in favor of the Defendants would clarify the parties' rights and obligations under the Personal Guaranty going forward. Under the first two prongs, this action would seem to warrant the Court's attention.

The fourth prong, concerning friction with state laws is minimal, but present. The parties dispute the applicability of a choice of law clause, under which this Court would be required to apply Minnesota law. However, Minnesota statutorily permits certified questions of law from the federal courts.[43] The ability of this Court to request clarification from Minnesota's judiciary minimizes potential issues of friction and encroachment should the choice of law clause be found valid.

It is the third prong of the analysis that is particularly troubling. Here, the Court must ask "[w]hether the declaratory remedy is being used merely for the purpose of "procedural fencing."[44] Although courts must carefully scrutinize most pleadings for evidence of "procedural fencing," here Plaintiff openly declares his *en garde*: "[Plaintiff], realizing defendants *might* erroneously attempt to avail themselves to the "Consent to Jurisdiction" clause contained in the Loan Security

---

[42]*Id.*

[43]Minn. Stat. Ann. § 480.065 (2011).

[44]*Mhoon*, 31 F.3d at 983.

Agreement, *acted defensively* by first filing for declaratory judgment in the Northern District of Oklahoma."[45]

The applicability of the forum selection clause is an issue that has yet to be determined. However, in his statement, Plaintiff lets slip his primary purpose in filing the suit—to avoid Defendants' invocation of the contested forum selection clause should they *ever decide to file suit*. Plaintiff's underlying intention for filing this declaratory action is clear and is a prime example of the type of "forum shopping" the Tenth Circuit seeks to discourage through this analysis.

With this in mind, the Court looks to the fifth prong, whether an alternative remedy is better or more effective. Plaintiff concedes that the actual threat he seeks to avoid by filing this suit is a *possible* suit in Minnesota. Multiple alternatives to declaratory judgment exist that could achieve Plaintiff's desired results, including arbitration, settlement, and ultimately direct action by the Defendants.  Even in a direct action, Plaintiff can still challenge  the applicability of the forum selection clause, and may yet receive his choice of forum. All of these alternatives are more appropriate than Plaintiff's misuse of the Declaratory Judgment Act in an attempt to avoid the *possible* application of a forum selection clause. Upon weighing all of the necessary factors, and giving particular weight to Plaintiff's rather bold admission of forum shopping, this Court believes it should abstain from hearing this matter under the Declaratory Judgment Act.

---

[45]Response in Opposition to Life Share Collateral's Motions to Dismiss for Lack of Subject Matter Jurisdiction at 4, Docket No. 20 (emphasis added).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Complaint for Declaratory Judgment is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED this 6th day of October, 2011

James H. Payne
United States District Judge
Northern District of Oklahoma